UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSHUA W. SEYFARTH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:18-cv-00805-SRC |
| ) | |
| OFFICER HAHN, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S TRIAL BRIEF

Comes now Plaintiff Joshua W. Seyfarth, by counsel Brandon M. Hall and W. Bevis Schock, and states for his Trial Brief:

**INTRODUCTION**

This is a credibility case, well-suited for a jury. Plaintiff Joshua Seyfarth was at his home asleep. Defendant Officer and his colleague, Officer Matthew Rion, arrived and after making contact with Plaintiff's mother, Mrs. Carole Seyfarth, requested that Plaintiff come out of his trailer and walk towards Defendant.

Plaintiff states that while walking towards Defendant, as instructed by Officer Rion, Defendant stepped into the breezeway in which Plaintiff was walking and struck Plaintiff in the face with an unknown object. Defendant denies these acts.

The jury will decide whether the Officer's conduct was unreasonable and therefore unconstitutional.

**PARTIES**

Plaintiff is an individual. Defendant is Deputy Zerick Hahn, a deputy with the City of St. Francois County Sherriff's Department.

**PROCEDURAL HISTORY AND REMAINING CLAIM**

The parties filed their initial pleadings, and discovery ensued. Defendant moved for summary judgment, and the court granted the motion in part and denied the motion in part, Doc. # 6. As a result of the court's ruling, Plaintiff's only remaining claim in the case is for excessive force related to the striking of Plaintiff's face.

The case is set for trial on Monday, June 28, 2021 at 9:00 a.m., on a three week docket. Plaintiff expects the trial to last two to three days. The case is set for final pretrial conference on Monday, June 24, 2021 at 9:00 a.m. in your Honor's courtroom.

**FACTS**

The facts are known to the court, and therefore Plaintiff provides here only a brief summary. St. Francois County deputies Zerick Hahn and Matthew Rion dispatched to the Seyfarth residence at approximately 2:00 p.m. on November 26, 2017. The circumstances surrounding the officers' dispatch are murky, at best. Deputy Hahn has, at different times, had different reasons for the dispatch to the Seyfarth residence, including: (i) that he and Officer Rion knew of outstanding warrants for the arrest of Plaintiff; (ii) in order to question Plaintiff about an alleged burglary in the Goose Creek subdivision; and (iii) in response to a distress call placed by the sister of a young woman who was a guest at the Seyfarth property. Notably, there is a dispatch record of the distress call. However, Defendant now claims he is unable to recall if he ever heard the distress call or if he did not hear about that distress call until after the incident.

When the officers arrived at gate to the Goose Creek subdivision, a gate attendant let them in and they went to the Seyfarth residence. Officer Hahn went to the side door of the Seyfarth home and made contact with Plaintiff's mother, Mrs. Carole Seyfarth, who instructed the officers that Mr. Seyfarth was asleep in his trailer on the other side of the property. Both Defendant and Deputy Rion

proceeded to walk over to the trailer where Mrs. Seyfarth indicated Josh was sleeping.  Officer Rion walked around the trailer, knocked on its windows, and announced that the presence of police and asked Mr. Seyfarth and the young woman to come out.  Defendant Hahn, at this time remained closer to the Seyfarth residence, at the opposite end of the trailer.   It is unclear who exited the trailer first, the woman, or Plaintiff.  Regardless, upon getting outfitted in a pair of long john pants and untied boots only, Plaintiff exited the trailer, as asked.  There is no allegation of unreasonable delay by Plaintiff in coming out of the trailer; in fact, Defendant admits just the opposite.  Upon his exit, Officer Rion instructed Plaintiff to walk through the narrow breezeway, towards Defendant.  Plaintiff also complied with this request.  However, prior to Plaintiff reaching Defendant, Defendant stepped into the breezeway and struck plaintiff in the face with an unknown object.

Defendant's blow to Plaintiff's face knocked Plaintiff briefly unconscious, caused Plaintiff to both urinate and defecate himself, and caused Plaintiff to propel backwards into his mother's trailer and strike the back of his head thereon. The blow also left a considerable gash and egg-like-contusion under Plaintiff's left eye.

Plaintiff asserts he complied with to Officer Rion and Defendant's command to walk towards Officer Hahn, particularly because Plaintiff was not wearing a shirt and had not even tied his boots.  Defendants assert that Plaintiff attempted to flee and/or resist and they were required to take him to the ground involuntarily.  Notably, too, the whole series of events was witnessed by Mrs. Carole Seyfarth, who viewed the events from approximately 40-50 feet away on a raised balcony, with a clear view of the incident.

Defendant states that he was approximately five yards away from the breezeway, and Plaintiff ran.  Defendant asserts Defendant chased Plaintiff and tackled him from behind, and

3

Plaintiff fell to the ground.  Defendant denies knowing how the injury to the face occurred, but he suggests it was from the gravel on the ground.

The disputed facts are (1) Plaintiff asserts that as he walked towards Defendant, Defendant stepped into the breezeway and struck Plaintiff in the face, while (2) Defendant denies striking the Plaintiff and asserts that Plaintiff ran.  It is undisputed, however, that Plaintiff received significant visible injuries to his face, and head, including a gash under his eye and raised bruises under his left eye and on the back right side of Plaintiff's head.

Plaintiff was not offered medical care or a medical evaluation.  Further, Plaintiff was forced to sit in his own urine and feces for nearly an hour, as the Defendant would not allow Plaintiff to change his clothes. Plaintiff has physically healed.

Plaintiff has suffered—and continues to suffer—garden variety emotional distress from the incident, and loss of trust in law enforcement.

## THE EVIDENCE

### Factual Evidence: Testimony and Exhibits

In the factual evidence part of his case Plaintiff will testify, and Plaintiff will also call his mother, Carole Seyfarth, who witnessed the events.  If Plaintiffs call Defendants in Plaintiff's case in chief, Plaintiff will seek to use leading questions when examining Defendant on direct for they are adverse witnesses.  Fed. R. Evid. 611(b).  Plaintiff will offer various pictures into evidence.

Plaintiff anticipates that there will be few if any disputes over exhibits.  The parties have been in productive discussions and there are no authenticity issues.

### Compensatory Damages

Through his own testimony Plaintiff will present evidence of his injuries, and Plaintiff will show the jury the photographs.  Counsel will also hear from Plaintiff's mother about her perception

4

of the injuries caused. Plaintiff will also testify regarding the garden variety emotional and mental harms he has sustained as a result of the incident.

## Punitive Damages

Plaintiffs are seeking punitive damages because Defendant's conduct was malicious or recklessly indifferent to the plaintiff's right to be free from excessive force.

## INSTRUCTIONS

For all proposed instructions Plaintiff is filing proposed dirty copies and clean copies. After review by the court and Defendant, and thus after resolution of any issues, Plaintiff will file clean copies and/or provide the court with clean hard copies.

## Standard Instructions

Plaintiff expects no material issues with the standard instructions, subject to review by Defendant and the court.

## Verdict Director

The verdict director is directly taken directly from the Eighth Circuit Model Civil Jury Instructions, 4.40, excessive force, pursuant to *Graham v. Connor*, 490 U.S. 386, 388 (1989). Because there is only one cause of action and that happens to be the one in the Model Instructions, the instructions should present far fewer problems than in the average case.

## Damages Instructions

The damages instructions are also directly from the Eighth Circuit Model Jury Instructions for compensatory and punitive damages, 4.70 and 4.72 respectively.

Plaintiff will introduce both direct and circumstantial evidence sufficient for the jury to conclude that Defendant was "*malicious* or recklessly indifferent to the plaintiff's right to be free of excessive force" (emphasis added).

**Verdict Form**

The verdict form is again directly from the Model Instructions, 4.80.

## COLOR OF STATE LAW

Color of State law in not in dispute in this case.

## MOTIONS IN LIMINE

Pursuant to the Case Management Order, Doc. # 40, 21 days before trial, that is, on June 7, 2021, Plaintiff will submit his Motions in Limine.

Plaintiff anticipates that the parties will be able to work out many of their respective Motions in Limine in advance of the submission of those Motions and/or before the final pre-trial conference.

## CASE SUMMARY FOR VOIR DIRE

The Parties have agreed upon and are filing a proposed short statement to be read at the beginning of voir dire.

## VOIR DIRE

Plaintiff asks the Court to grant Plaintiff one hour to conduct Plaintiff's voir dire. § 1983 cases, particularly in light of the events of Ferguson, Missouri and follow up events during that last few years, draw out passionate pre-existing beliefs from within the venire. It will thus take a substantial amount of time to explore bias and/or potential bias.

It is Plaintiff's intention that with several minutes left, Plaintiffs' counsel will review of the number of jurors likely to be stricken for cause, and then ask individual questions of those in the "front rows" who are likely to be "below the cut off" but who have not yet spoken.

## JURORS' NOTE TAKING

Plaintiff strongly opposes juror note taking because he believes juror note taking (a) distracts jurors from listening to the witnesses' actual words and observing their demeanor, and (b) during deliberations tends to improperly make those who have taken notes arbiters of disputes over what given witnesses have actually said on the stand, and such arbiters may or may not be correct.  Also, this will likely be a relatively short trial and so there is little concern with jurors forgetting testimony from early in the case.

## "THE RULE"

Plaintiff asks that this Court enforce "The Rule"; that is, Plaintiff asks the court to exclude witnesses from the court room before their testimony.  Fed. R. Evid. 615.

## CLOSING

Plaintiff intends to make a "send a message argument" in closing.  In *Nice v. ZHRI, Inc.*, 105 F. Supp. 2d 1028 (E.D. Ark. 2000) the court wrote:

> The Court believes that it would be entirely proper for plaintiff's counsel to argue:
>
>> Members of the jury, if you will return a fair and adequate *compensatory* damage award in this case, it will send the defendants a message.
>
> As Dean William L. Prosser pointed out over 35 years ago:
>
>> The "prophylactic" factor of preventing future harm has been quite important in the field of torts. The courts are concerned not only with compensation of the victim, but with admonition of the wrongdoer. When the decisions of the courts become known, and defendants realize that they may be held liable, there is of course a strong incentive to prevent the occurrence of the harm.
>
> Prosser, Handbook on the Law of Torts at 23 (3d ed. 1964).

Dean Keeton tells us the same thing. Prosser & Keeton, Torts § 4 at 25 (5th ed. 1984).

Plaintiff acknowledges, of course, that it would be inappropriate during closing to describe Defendant hyperbolically as "monster" or "the devil."

## FINAL THOUGHTS

7

Counsel for the parties are all experienced and know each other well.  Plaintiff's counsel believe that while this will be a hard fought trial, it will be clean fight with a minimum of objections.

                                            Respectfully submitted,

                                            Co-Counsel for Plaintiff:

                                            /s/ Brandon M. Hall.
                                            Brandon M. Hall, # 72497MO
                                            Armstrong Teasdale
                                            7700 Forsyth Blvd., Ste. 1800
                                            St. Louis, MO  63105
                                            bhall@atllp.com
                                            Phone: 518-727-8805

                                            /s/ W. Bevis Schock.
                                            W. Bevis Schock, # 32551MO
                                            Attorney at Law
                                            7777 Bonhomme Avenue Ste. 1300
                                            St. Louis, MO 63105
                                            wbschock@schocklaw.com
                                            Fax:    314-721-1698
                                            Phone: 314-726-2322

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2021, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

All counsel of record.

                                            /s/ Brandon M. Hall   .
                                            Brandon M. Hall, 72497MO